UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LAURA D.,[1]

      **Plaintiff,**

      v.

**COMMISSIONER OF SOCIAL SECURITY,**[2]

      **Defendant.**

Case No. 3:20-cv-0238
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Laura D. for child's insurance disability benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 423, 1381. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 12, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

Plaintiff filed her current applications for benefits in August and October 2016, respectively, alleging that she has been disabled since October 1, 2005, as a result of both

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

physical and mental impairments, including a learning disability. R. 278–283, 284–290, 341.[3] The applications were denied initially and upon reconsideration, and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 178. Administrative Law Judge ("ALJ") Deborah F. Sanders held a hearing on April 19, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 40–78. In a decision dated June 25, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from Plaintiff's alleged disability onset date through the date of that decision. R. 10–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 23, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3] References to pages in the Certified Administrative Record will be cited as "R. _."

2

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **B.**    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be

disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 18 years old on October 1, 2005, her alleged disability onset date. R. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 12.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: persistent depressive disorder, unspecified anxiety disorder, borderline intellectual functioning, degenerative disc disease, lumbar, with disc bulges and mild bilateral facet arthropathy, lattice degeneration of the retina, bilateral, peripheral retinal degeneration, dry eye syndrome, morbid obesity, and pulmonary nodules. R. 12–13. The ALJ also found that Plaintiff's documented mild obstructive sleep apnea was not a severe impairment. R. 13.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–16.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work. R. 16. The ALJ also found that Plaintiff had no past relevant work. R. 23.

At step five, the ALJ found that, considering Plaintiff's vocational profile and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including such jobs as housekeeper cleaner, merchandise marker, and cleaner polisher. R. 24. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2005, her alleged disability onset date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at step three. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or,

alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 14.

**IV. DISCUSSION**

The single issue presented in this case is Plaintiff's claim that she meets or equals Listing 12.05B, which addresses intellectual disorders.[4] In order to qualify for disability under a listed impairment, a claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. §§ 404.1525(d); 416.925(d). The claimant "must point to specific evidence that demonstrates [that] [she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 12.05B is satisfied if the claimant establishes (1) significantly below average general intellectual functioning, proven by IQ testing[5]; (2) significant deficits in adaptive

---

[4] The Acting Commissioner contends that, because the ALJ found that Plaintiff suffers from borderline intellectual functioning, her mental impairment should be analyzed under Listing 12.11, which addresses learning disorders, borderline intellectual functioning and tic disorders such as Tourette syndrome. Listing 12.00B9b. However, the ALJ expressly analyzed Plaintiff's claim by reference to both listings, and it is only the ALJ's analysis of Listing 12.05B that Plaintiff challenges. The Court will therefore address only the ALJ's Listing 12.05B analysis. In any event, the factors specifically addressed by Plaintiff in connection with Listing 12.05B also apply to Listing 12.11. *Compare* Listing 12.05B2a-d *with* Listing 12.11B1-4.

[5] "Significantly subaverage general intellectual functioning" is evidenced by a full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or a full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence. Listing 12.05B1a, b.

functioning, demonstrated by marked[6] or extreme[7] mental functioning limitations; and (3) evidence suggesting that the disorder began prior to age 22. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B1-3.[8] The ALJ found that Plaintiff's full scale IQ score of 70, reported by the consultative psychological examiner Brian Griffiths, Psy.D., R. 887, satisfied the first criterion of Listing 12.05B. However, the ALJ also found that Plaintiff did not satisfy the second criterion because she did not establish an extreme limitation of one or a marked limitation of two of the specified areas of mental functioning. R. 16.[9] The ALJ specifically found that Plaintiff has only moderate limitations in all four functional areas. R. 13-14.

---

[6] A "marked limitation" will be found if the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." Listing 12.00F2d.

[7] An "extreme limitation" will be found if the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." Listing 12.00F2e.

[8] Listing 12.05B is met by evidence establishing the following:
    1. Significantly subaverage general intellectual functioning evidenced by a or b:
        a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
        b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
    2. Significant deficits in adaptive functioning currently manifested by extreme[8] limitation of one, or marked[8] limitation of two, of the following areas of mental functioning:
        a. Understand, remember, or apply information (see 12.00E1); or
        b. Interact with others (see 12.00E2); or
        c. Concentrate, persist, or maintain pace (see 12.00E3); or
        d. Adapt or manage oneself (see 12.00E4); and
    3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

[9] The four functional areas are further defined in the Commissioner's regulations as follows:
    1. Understand, remember, or apply information (paragraph B1). This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.
    2. Interact with others (paragraph B2). This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and

The claimant testified she has poor memory and difficulty remembering. She testified she has borderline intellectual functioning. She additionally testified she has panic attacks. Records document treatment for anxiety and depression. However, treatment has consisted almost entirely of outpatient mental health counseling, and she testified she has not taken any medications for her mental health for years. Mental status examination findings are mixed noting [sic]. Some examinations note poor attention and concentration with other examinations noting appropriate attention (Exhibit 9F, 15F). Additionally, the claimant at times presented with anxious and depressed mood, and other times with euthymic or appropriate mood and affect (Exhibit 9F; 10F; 11F; 15F). The claimant does have a history of borderline intellectual functioning, with IQ scores of 70-72, but was noted [to] understand and remember simple questions, upon examination (Exhibit 10F). She is generally noted to be cooperative, although avoidant eye contact was noted on occasion (Exhibit 9F, 10F, 15F).

The claimant's activities do not evidence greater than moderate limitations. The claimant testified that she has a driver's license and is able to drive. She drives to the grocery store. She testified she is able to go grocery shopping alone. She testified she has a dog she cares for. She is able to watch TV, go on Facebook, talk on Facebook messenger, and make dinner. She testified she enjoys watching cartoons, and doing jigsaw puzzles. At her consultative examination, the claimant reported living with her boyfriend. She reported visiting with her parents and hanging out with friends playing board games. (Exhibit 10F). She reported she is able to tend to her own grooming and hygiene. She reported some difficulties doing household chores because of back pain, but reported she could fix a meal and go grocery shopping. Sh[e re]ported she was able to count money and pay bills.

---

keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

3. Concentrate, persist, or maintain pace (paragraph B3). This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

4. Adapt or manage oneself (paragraph B4). This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. Listing 12.00E.

R. 14. In the view of this Court, the ALJ's summary of the record evidence is accurate and her analysis of Listing 12.05B enjoys substantial support.

In her challenge to the ALJ's findings and analysis, Plaintiff refers only to the two consultative psychological examinations reflected in the record. Katherine Myers, Psy.D., evaluated Plaintiff in November 2016, upon referral from her therapist for purposes of differential diagnoses and treatment planning. R 874-79. Plaintiff's school records reflected an IEP and classification as "developmental handicap" and borderline intellectual functioning, R. 879, and Plaintiff reported placement in special education classes. *Id*. She finished her final year of high school on-line because she was "bullied" at school. R. 875. She reported brief episodes of prior employment, which ended because of physical problems. *Id.* On clinical examination, Plaintiff was disheveled; her affect was quite blunted and her mood was somewhat depressed. IQ testing placed her in the borderline range. R. 877. Her score on the Working Memory Index placed her in the "extremely low range of ability." *Id*. According to Dr. Myers, Plaintiff "struggles significantly with attention and concentration…particularly in the areas of working memory and processing speed." R. 879. Dr. Myers diagnosed borderline intellectual functioning and "persistent depressive disorder with anxious [sic] distress." *Id*. She recommended medication and continue psychotherapy. *Id.*

In January 2017, Brian Griffiths, Psy.D., performed a consultative psychological examination at the request of the state agency. R. 881-892. In discussing her work history, Plaintiff reported that, with a couple exceptions, she got along well with supervisors and coworkers. R. 883. In describing her activities of daily living, Plaintiff reported that she cooks, grocery shops, counts money and pays bills. She has a drivers license. R. 886. On clinical examination, Plaintiff appeared anxious, depressed, and intellectually limited; her grooming and

9

hygiene were adequate. *Id*. She had difficulty understanding adult terminology and simple psychological constructs. *Id.* Her remote recall was characterized as adequate but her short-term memory was deficient. R. 887. Testing indicated that her memory functioning was "poor." R. 889. As noted previously, Plaintiff achieved a full scale IQ score of 70, R. 887, a score that Dr. Griffiths stated was "generally consistent with her clinical presentation and academic background." R. 888. Her judgment was "marginally sufficient for her to make decisions [a]ffecting her future and to conduct her own living arrangements efficiently." R. 887.

Although Plaintiff refers only to the reports of these consulting examiners, the record also contains the opinions of state agency reviewing psychologists, who opined that Plaintiff had only "moderate" limitations in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. R. 87, 104 (January 2017 initial review of the record by Tonnie Hoyle, Psy.D.); R. 124 (March 2017 reconsideration review of the record by Karla Delcour, Ph.D.).

The ALJ considered all the medical evidence and opinions and assigned "some weight" to those of Drs. Hoyle and Delcourt:

> Overall the state agency medical consultants' opinions are well supported and are consistent with the evidence of record, including the claimant's limited and conservative mental health treatment history, as well as her significant daily activities…. The undersigned further notes that they had the opportunity to review much of the relevant evidence of record, including the claimant's intelligence testing…. However, the undersigned has not adopted the opinions verbatim as they are not provided in specific vocationally relevant terms.

R. 23. The ALJ also gave "some weight" to the findings and opinions of Drs. Meyers and Griffith. R. 23. However, the opinions and assessments of the state agency reviewing psychologists unquestionably provide substantial support in the record for the ALJ's determination that Plaintiff's intellectual disorder neither meets nor equals Listing 12.05B. The

Court must therefore defer to that determination, even if the record may also contain other evidence that could support a contrary conclusion. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) and *Key,* 109 F.3d at 273).

## V. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's the decision and **DIRECTS** the Clerk to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 8, 2022                                    *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE